*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

| | | |
|---|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY and OHIO SECURITY INSURANCE COMPANY, | : | Civil Action No. |
| | : | **COMPLAINT FOR DECLARATORY** |
| Plaintiff, | : | **RELIEF** |
| | : | |
| vs. | : | |
| | : | |
| ICE AIR, LLC, | : | |
| Defendant. | : | |

<u>**COMPLAINT FOR DECLARATORY RELIEF**</u>

Plaintiffs, The Ohio Casualty Insurance Company ("OCIC") and Ohio Security Insurance Company ("OSIC"), by and through their undersigned counsel, as and for their Complaint against defendant Ice Air, LLC ("Ice Air"), alleges upon information and belief as follows:

<u>**NATURE OF ACTION**</u>

1. Subject to a full reservation of all rights and partial disclaimer, OSIC has provided a defense to Ice Air under OCIC policy no. EKO56993015 (12/15/15-12/15/16) issued to Ice Air for claims against Ice Air in a civil action entitled *Edifice Le Coin Inc. v. EMD Construction Inc., et al.*, pending in the Superior Court (Civil Division), Providence of Quebec, District of Montreal, Canada under No. 500-17-108437-198 ("Underlying Action").

2. In the Underlying Action, the Claimant alleges that HVAC units manufactured by Ice Air and installed by others in a hotel located in Old Montreal were defective and need to be replaced. Claimant seeks recovery of the cost to replace the HVAC units, asserting said costs are approximately $2,787,865.54.

3. In this action, OCIC and OSIC seek a declaration that they have no obligation to indemnify Ice Air for any settlement by or judgment against Ice Air in the Underlying Action for costs associated with the repair and/or replacement of the HVAC units.

## PARTIES

4. OCIC is an insurance company organized under the laws of the State of New Hampshire with a principal place of business located in Boston, Massachusetts.

5. OSIC is an insurance company organized under the laws of the State of New Hampshire with a principal place of business located in Boston, Massachusetts.

6. Upon information and belief, Ice Air is a limited liability company formed in the State of Delaware with a principal place of business in Mt. Vernon, New York.

## JURISDICTION

7. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of

$75,000, exclusive of interest and costs, pursuant to 28 U.S.C. §2201.

8. In the Underlying Action, plaintiff, Edifice La Coin Inc. ("Claimant"), seeks to recover the cost to repair and/or replace allegedly defective HVAC units manufactured by Ice Air in the amount of $2,787,865.54.

9. An actual justiciable controversy exists between OCIC, OSIC and Ice Air regarding the coverage, if any, afforded to Ice Air for costs claimed to replace the allegedly defective HVAC units manufactured by Ice Air.

10.    OCIC and OSIC have no remedy at law.

**THE OCIC PRIMARY POLICIES**

11.    OCIC issued general liability policy nos. BKO56993015 (12/15/2015-12/15/2016) and BKO56993015 (12/15/2016-2/5/2017) (canceled) to Ice Air at 80 Hartford Avenue, Mt. Vernon, New York.

12.    The OCIC Policies include, among others, the following provisions:

The policies contain endorsement **CG 01 63 07 11 – New York Changes – Commercial General Liability Coverage Form**, which states in relevant part as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I** – **Coverage A Bodily Injury and Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the

4

"bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage" or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j. Damage To Property**

"Property damage" to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work";

or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";
**(2)** "Your work"; or
**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

\* \* \*

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

\* \* \*

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

\* \* \*

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;
**(b)** Others trading under your name; or
**(c)** A person or organization whose business or assets you have acquired; and

11

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

\* \* \*

## THE OSIC UMBRELLA POLICIES

13.    OSIC issued commercial umbrella liability policy nos. USO(16)56993015 and USO(17)56993015 to Ice Air for the periods December 15, 2015 to December 15, 2016 and December 15, 2016 to February 5, 2017 (canceled) ("OSIC Policies").

14.     Subject to their terms, conditions, exclusions and limit, the OSIC Policies apply to sums in excess of the "retained limit" that the insured becomes legally obligated to pay because of "property damage" that takes place during the policy period and is caused by an occurrence.

15.     The "Retained Limit", which must be exhausted before the OSIC Policies can be reached, is defined as the total amount of the applicable limits provided by the underlying OCIC Policies and/or the self-insured retention specified in the Declarations.

<u>BACKGROUND FACTS</u>

16.     In connection with the construction of a hotel located in Old Montreal, Ice Air was engaged to manufacture HVAC units to be installed in the various hotel rooms.  The design and technical specifications for the HVAC units were performed, prepared and approved by others.

17.     Work on the hotel was deemed to be substantially complete on June 23, 2016.  On June 30, 2016, Ice Air attended a meeting at which it was made aware of several alleged malfunctions, defects and operational issues with the HVAC units.

18.     Following further investigation and inspections, in May 2019 Ice Air was notified that 91 HVAC units had been

inspected, 64 of which were deemed to be defective, non-conforming and non-operational.

19.     Thereafter, the Claimant determined that all of the HVAC units manufactured by Ice Air require replacement.

20.     As such, Claimant demands damages consisting of the cost to replace the HVAC units.

21.     In comprehensive coverage position letters dated October 12, 2021 and July 1, 2024, OCIC informed Ice Air that it would provide a defense to Ice Air pursuant to a full and complete reservation of all rights and a partial disclaimer for costs and damages associated with the repair and/or replacement of Ice Air's allegedly defective product, the HVAC units.

22.     OCIC's coverage position letters noted:

- that damages for repair or replacement of the HVAC units do not constitute "property damage" caused by an "occurrence" within the meaning of the OCIC Policies and that, therefore, there was no claim for damages because of "property damage" caused by an "occurrence";

- that coverage under the OCIC Policies is limited to "property damage," if any, that takes place during the policy period and that no coverage is extended for "property damage" taking place outside of the policy period;

14

- that coverage under the OCIC Policies does not apply to "property damage" to that particular part of real property on which Ice Air or any contractors or subcontractors working directly or indirectly on behalf of Ice Air are performing operations if any such "property damage" arises out of those operations;

- that coverage under the OCIC Policies does not apply to "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it;

- that coverage under the OCIC Policies does not apply to "property damage" to "your product", arising out of "your product", or any part of it;

- that coverage under the OCIC Policies does not apply to "property damage" to "your work", arising out of "your work", or any part of it;

- that coverage under the OCIC Policies does not apply to "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or a delay or failure by Ice Air or anyone acting on behalf of Ice Air to perform a contract or agreement in accordance with its terms;

15

- there is no coverage under the OCIC Policies for damages incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product", "your work", or "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of the known or suspected defect, deficiency, inadequacy or dangerous condition.

23.    Ice Air has accepted OCIC's defense subject to the reservations of rights.

24.    Investigation and discovery in the Underlying Action reveal that the HVAC units themselves are allegedly defective and the remedy sought is complete replacement of all HVAC units manufactured by Ice Air.

### COUNT ONE

### CAUSE OF ACTION FOR DECLARATORY RELIEF WITH RESPECT TO OCIC POLICIES

25.    OCIC repeats and realleges each and every allegation set forth in paragraphs 1 through 24 as if same were fully set forth herein at length.

26.    Ice Air's provision of HVAC units that allegedly do not meet the required specifications, operational criteria and which were otherwise defective or deficient do not constitute an "occurrence" within the meaning of the OCIC Policies.

16

27.     Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient do not constitute "property damage" within the meaning of the OCIC Policies.

28.     Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Contractual Liability" exclusion in the OCIC Policies.

29.     Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Property" exclusion in the OCIC Policies.

30.     Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Your Product" exclusion in the OCIC Policies.

31.     Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Your Work" exclusion in the OCIC Policies.

32.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Impaired Property or Property not Physically Injured" exclusion in the OCIC Policies.

33.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Recall of Products, Work or Impaired Property" exclusion in the OCIC Policies.

34.    Accordingly, OCIC is entitled to a declaration that it has no obligation to indemnify Ice Air, pay or reimburse all or any part of any settlement by or judgment against Ice Air in the Underlying Action for damages associated with the repair or replacement of the HVAC units manufactured by Ice Air.

<u>COUNT TWO</u>

<u>CAUSE OF ACTION FOR DECLARATORY RELIEF WITH RESPECT TO OCIC
POLICY BKO56993015</u>

35.    OCIC repeats and realleges each and every allegation set forth in paragraphs 1 through 34 as if same were fully set forth herein at length.

36.    The Insuring Agreement for OCIC policy no. BKO56993015 (12/15/2016-02/05/2017) (canceled) provides that any

insurance under it applies only if prior to the policy period no insured and no employee of an insured authorized to give or receive notice of an occurrence or claim knew that any "property damage" had occurred in whole or in part.

37.    Policy    no.    BKO56993015    (12/15/2016-02/05/2017) (canceled) became effective on December 15, 2016.    Ice Air attended an emergency meeting in June 2016 at which time it was made known that the HVAC units were defective, non-functional and did not meet technical specifications.

38.    Therefore, Ice Air knew that the HVAC units were defective, non-functional and did not meet technical specifications approximately six months prior to the inception of policy no. BKO56993015 (12/15/2016-02/05/2017) (canceled).

39.    Accordingly, the requirements for coverage under the insuring agreement of policy no. BKO56993015 (12/15/2016-02/05/2017) (canceled) are not met and there is no coverage under said policy for any claims against Ice Air in the Underlying Action.

**COUNT THREE**

**CAUSE OF ACTION FOR DECLARATORY RELIEF WITH RESPECT TO THE OSIC
COMMERCIAL UMBRELLA POLICIES**

40.     Plaintiffs repeat and reallege each and every allegation
set forth in paragraphs 1 through 39 as if same were fully
set forth herein at length.

41.     OSIC policy no. USO(17)56993015 (12/15/16-2/5/17)
(canceled) provides that any insurance under it applies only
if prior to the policy period no insured and no employee of
an insured authorized to give or receive notice of an
occurrence or a claim knew that any "property damage" had
occurred in whole or in part.

42.     OSIC policy no. USO(17)56993015 (12/15/16-2/5/17)
(canceled) became effective on December 15, 2016.  Ice Air
attended an emergency meeting in June 2016 at which time it
was made known that the HVAC units were defective, non-
functional and did not meet technical specifications.

43.     Therefore, Ice Air knew that the HVAC units were
defective, non-functional and did not meet technical
specifications approximately six months prior to the
inception of OSIC policy no. USO(17)56993015 (12/15/16-
2/5/17) (canceled).  Accordingly, the requirements for
coverage under OSIC policy no. USO(17)56993015 (12/15/16-
2/5/17) (canceled) are not met and there is no coverage under

said policy for any claims against Ice Air in the Underlying Action.

44.      There has not been proper exhaustion of the "Retained Limit" required to reach the OSIC Policies.   Accordingly, there can be no current obligation under the OSIC Policies for the claims asserted against Ice Air in the Underlying Action.

45.      Ice Air's provision of HVAC units that allegedly do not meet the required specifications, operational criteria and which were otherwise defective or deficient do not constitute an "occurrence" within the meaning of the OSIC Policies.

46.      Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient do not constitute "property damage" within the meaning of the OSIC Policies.

47.      Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Contractual Liability" exclusion in the OSIC Policies.

48.      Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are

excluded by the "Damage to Property" exclusion in the OSIC Policies.

49.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Your Product" exclusion in the OSIC Policies.

50.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Your Work" exclusion in the OSIC Policies.

51.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Damage to Impaired Property or Property not Physically Injured" exclusion in the OSIC Policies.

52.    Damages for Ice Air's provision of HVAC units that allegedly do not meet the required specification, operational criteria and which were otherwise defective or deficient are excluded by the "Recall of Products, Work or Impaired Property" exclusion in the OSIC Policies.

53.    Accordingly, OSIC is entitled to a declaration that it has no obligation to indemnify Ice Air, pay or reimburse all

or any part of any settlement by or judgment against Ice Air in the Underlying Action for damages associated with the repair or replacement of the HVAC units manufactured by Ice Air.

### PRAYER FOR DECLARATORY RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court issue judgment in its favor as follows:

1. Declaring and determining that there is no obligation on the part of OCIC to indemnify Ice Air under policy no. BKO56993015 (12/15/2015-12/15/2016) for any settlement by or judgment against Ice Air for damages and costs to repair or replace the HVAC units manufactured by Ice Air.

2. Declaring and determining that there is no obligation on the part of OCIC to indemnify Ice Air under policy no. BKO56993015 (12/15/2016-02/05/2017) (canceled) for any settlement by or judgment against Ice Air for damages and costs to repair or replace the HVAC units manufactured by Ice Air.

3. Declaring and determining that there is no obligation on the part of OSIC to indemnify Ice Air under commercial umbrella policy no. USO(16)56993015 (12/15/15-12/15/16) for any settlement by or judgment against Ice Air for damages and costs to repair or replace the HVAC units manufactured by Ice Air.

4. Declaring and determining that there is no obligation on the part of OSIC to indemnify Ice Air under commercial umbrella policy no. USO(17)56993015 (12/15/16-2/5/17) (canceled) for any settlement by or judgment against Ice Air for damages and costs to repair or replace the HVAC units manufactured by Ice Air.

5. Awarding Plaintiffs fees and costs associated with this action.

6. Granting such other relief as the Court may deem just and proper.

DATED:  New York, New York       HARDIN, KUNDLA, MCKEON & POLETTO
        May 14, 2025             Attorneys for Plaintiffs, Ohio
                                 Casualty Insurance Company and
                                 Ohio Security Insurance Company
                                 110 William Street
                                 New York, NY 10038
                                 Telephone: 212-571-0111
                                 Email: jfavate@hkmpp.com


                                 By: _____
                                         John S. Favate, Esq.